UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                                 :

**KEVIN PINNOCK**,

                          Plaintiff,

               – against –

**COMMISSIONER OF SOCIAL SECURITY**,

                        Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

22-CV-6858 (AMD)

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff challenges the Social Security Commissioner's decision that he was not disabled for the purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (ECF No. 1 ¶ 1.) As explained below, the Court grants the plaintiff's motion for judgment on the pleadings, denies the Commissioner's cross-motion and remands the case for further proceedings.

## BACKGROUND

**I.    Procedural History**

      The plaintiff applied for DIB on November 8, 2016, alleging disability since September 10, 2016, when he hurt his back at work. (ECF No. 10, Administrative Transcript ("Tr.") 11, 32, 525.) The Social Security Administration ("SSA") denied his claim on March 16, 2017 after initial review. (Tr. 119.) After the plaintiff requested a hearing on May 15, 2017 (Tr. 162–63), hearings took place in March and June 2019 (Tr. 55, 88); the plaintiff,[1] medical expert Dr. Louis Fuchs, and vocational expert Don Schader testified (Tr. 55–107). In a September 24, 2019

---

[1] The plaintiff was represented by counsel.

decision, ALJ Barbara Dunn determined that the plaintiff was not disabled and denied his claim. (Tr. 124–33.) On October 20, 2020, the Appeals Council vacated the decision and remanded for the ALJ to (i) issue a decision "for the entire period at issue, from the alleged onset date through the date of the hearing decision or date last insured;" (ii) "[f]urther consider the claimant's obesity;" (iii) further consider "the claimant's maximum [RFC] during the entire period at issue and provide rationale with specific references" to the record in support of the limitations; (iv) "further evaluate" Dr. Fuchs' opinion and explain the weight given to his opinion; and (v) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert." (Tr. 139–43.)

ALJ Dunn held another hearing on February 25, 2021, at which the plaintiff and vocational expert Esperanza DiStefano testified. (Tr. 27–54.) In a June 21, 2021 decision, ALJ Dunn again determined that the plaintiff was not disabled and denied his claim. (Tr. 11–26.) On September 16, 2022, the Appeals Council denied the plaintiff's request for review, rendering the ALJ's denial the "final decision" of the Commissioner. (Tr. 1–7.) The plaintiff filed this action on November 9, 2022 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 12, 16).

## II. Medical Opinions

Dr. Gary Carpenter,[2] the plaintiff's primary care physician, diagnosed the plaintiff with chronic bilateral low back pain, without sciatica, disc degeneration, and mild facet joint arthrosis. (Tr. 494.) He opined that these diagnoses did not affect the plaintiff's ability to stand and walk,

---

[2] Dr. Carpenter's records include treatment notes from October 2014 to January 2019 (Tr. 509–78, 699–723, 735–53), as well as from a July 2, 2018 annual physical, at which Dr. Jedediah Burack, MD examined the plaintiff (Tr. 724–34). Dr. Burack noted that the plaintiff's back pain was "not palpable on exam[ination]." (Tr. 726.)

2

but that he could only sit for one hour in an eight-hour workday. (*Id.*) The plaintiff could "constantly" "[f]eel" and "[h]andle," "frequently" "[r]each," including overhead, "occasionally" lift up to five pounds, "[b]end," "[b]alance," and "[c]rouch," but never "[c]limb," "[s]toop," "[k]neel," "[c]rawl," "[p]ush," or "[p]ull." (Tr. 494–95.) He should avoid moving machinery and vibration. (Tr. 495.) Dr. Carpenter found that the plaintiff had these limitations since February 25, 2013. (*Id.*)

Dr. Anzhela Dvorkina,[3] another treating physician, diagnosed the plaintiff with "other intervertebral disc degeneration" in the lumbar region, "lumbosacral" "radiculopathy," and "other specific joint derangements of [the] left shoulder." (Tr. 630). She opined that as of November 2016 the plaintiff was 75 percent "temporar[ily] impair[ed]" and could not return to work (Tr. 632–33); in subsequent reports, she variously concluded that the plaintiff was 50, 75 or 100 percent temporarily impaired (Tr. 638, 641, 644, 646, 649, 655, 658, 662, 669, 675, 758). Regarding specific limitations, Dr. Dvorkina's opinion on the plaintiff's ability to lift varied. In one report, she found the plaintiff could lift only 10 to 15 pounds. (Tr. 669.) In others, he could lift up to 25 pounds. (Tr. 638, 641, 644). Sometimes she did not specify a weight limit (Tr. 646, 649, 658, 675), and sometimes she did not mention a lifting limitation at all (Tr. 633, 652, 655, 662, 758). In some reports, she opined that the plaintiff could not "climb[] stairs, kneel[]," "sit[], stand[]" or "use" his arms" (*see, e.g.*, Tr. 638, 641, 644, 649, 658); other reports included "[b]ending/twisting" and "[o]erating heavy equipment" among the plaintiff's limitations (*see, e.g.*, Tr. 646, 649, 658, 669). In one report, she opined that the plaintiff could do "sedentary work only." (Tr. 662.)

---

[3] The record includes Dr. Dvorkina's treatment notes from November 2016 through April 2019. (*See* Tr. 459–68, 630–76, 682, 684–85, 688–90, 758.)

3

Dr. Chaim Shtock, a consulting orthopedist, examined the plaintiff in January 2017 and, based on his reported medical history, diagnosed him with lower back, left shoulder, and "episodic" left knee pain, and hypertension.[4]  (Tr. 444.)  Dr. Shtock opined that the plaintiff had a "normal" gait, did not use a cane, could "walk on [his] heels and toes without difficulty and "[s]quat [at] 50% of full," "[n]eeded no help changing for the exam or getting on and off [the] exam table," and was "[a]ble to rise from [a] chair without difficulty."  (Tr. 442.)  The plaintiff had "mild" limitations with "heavy lifting, squatting," "frequent stair climbing, walking long distances, standing long periods, and sitting long periods;" "mild to moderate" limitations with "frequent bending;" "moderate" limitations with "crouching" and "performing overhead activities using [his] left arm;" and "no limitations" with "performing overhead activities using the right arm" and "using both hands for fine and gross manual activities."  (Tr. 444.)

Dr. Louis A. Fuchs, a medical expert, did not examine the plaintiff, but gave his opinion based on his "education, experience, and training," and his "review of the medical evidence." (Tr. 61.)  Dr. Fuchs concluded the plaintiff's impairments were "lumbar critical myosastitis" and "rule out impingement left shoulder"[5] (*id.*),[6] which limited him to sitting, standing and walking "comfortably without interruption" for two hours in an eight-hour workday (Tr. 64).  He could stand or walk for six hours without using a cane, and "be sedentary" for eight hours "with the appropriate workplace."  (*Id.*)  The plaintiff could lift or carry up to 10 pounds "continuously," up to 20 pounds "frequently," and up to 50 pounds "occasionally" if he used both arms.  (Tr. 63.)

---

[4] He also listed as diagnoses "motor vehicle accident with injury to the neck, lower back, left shoulder, and left knee," "status post left knee arthroscopic surgery," and "work-related injury of the lumbar spine."  (Tr. 444.)

[5] The record does not define these diagnoses.

[6] Dr. Fuchs found that the record did not "refer[] to a left knee impairment," but showed that the plaintiff's gait was "satisfactory."  (Tr. 62.)

4

He could continuously "reach[], handl[e], finger[], push[], and pull[]" and occasionally "reach overhead" with both arms, "balance, stoop, kneel, crouch, crawl," and "be exposed to humidity or witness" and "cold." (Tr. 64.) The plaintiff could "frequently" "go up stairs," "be in unprotected heights, be around mechanical parts, [and] drive," but could never climb ladders or scaffolds or be exposed to vibrations. (*Id.*) He could perform "all activities of daily living," including "shopping, preparing a meal, [and] showering." (*Id.*)[7]

Finally, Dr. W. Wells gave a consultative opinion on March 10, 2017 for the SSA's initial disability determination. (Tr. 114–15.) He did not personally examine the plaintiff and reviewed only the medical evidence submitted up to that date, which appears to have included the Worker's Compensation reports and notes, Dr. Shtock's opinion, and unknown other records that the plaintiff submitted on November 30, 2016 and January 5, 2017. (Tr. 113–14, 131.) Dr. Wells found that the plaintiff could lift 10 pounds "frequently" and 20 pounds "occasionally," stand and walk for six hours a day, and sit for six hours a day, but his ability to push and pull with his left "lower extremity" was "limited." (Tr. 115.) He did not need a cane to help him walk. (*Id.*) Additionally, the plaintiff could "continuously" "climb[] ramps/stairs," "[c]limb[] [l]adders/ropes/scaffolds," and "[b]alanc[e];" and "frequently" "[s]toop[]" "[k]neel[]," "[c]rouch[]," and "[c]rawl[]." He had no "manipulative, visual, communicative or environmental limitations." (*Id.*)

### III. The ALJ's Opinion

The ALJ determined that the plaintiff was not disabled within the meaning of the Act and denied his claim. (Tr. 12, 21.) She concluded that (1) the plaintiff had not engaged in substantial

---

[7] Dr. Fuchs found that the plaintiff also could "frequently" use "bilateral[] foot control" with "certain postural activities," but did not define these activities.

5

gainful activity since September 10, 2016, the alleged onset date, (2) his "severe impairments" included cervical and lumbar degenerative disc disease, degenerative joint disease of the left knee, hypertension, obesity, and left shoulder arthropathy, and (3) that those impairments, considered individually or in combination, did not meet or equal any of those listed in Appendix 1 of the regulations. (Tr. 14.) The ALJ determined that the plaintiff's medical impairments could reasonably be expected to cause his symptoms, but that his statements about the "intensity, persistence and limiting effects of [his] symptoms" were not "entirely consistent" with the evidence. (Tr. 17.) In the ALJ's view, the plaintiff retained the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [He] is able to lift, carry, push and pull 20 pounds frequently and 10 pounds occasionally, sit for 6 hours, and stand and walk for 6 hours with a cane for balance. The claimant is able to perform occasional overhead reaching with the left upper extremity, but is not able to climb ladders, ropes or scaffolds. He is occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He is able to do no more than frequent driving or bilateral foot controls. He is restricted from concentrated exposure to wetness and humidity, and working around dangerous machinery and heights.

(Tr. 15.)[8]

The ALJ based the RFC on the plaintiff's treatment notes, the effects of obesity, Dr. Fuchs' testimony, and the opinions of Doctors Carpenter, Dvorkina, Shtock, and Wells. (Tr. 17–19.)[9] She gave the opinions of Doctors Carpenter, Fuchs, Shtock, and Wells "partial weight;"

---

[8] The ALJ did not explain why the plaintiff could lift, carry, push and pull a heavier weight frequently, and a lighter weight occasionally.

[9] The record also includes opinions and treatment notes, prepared for the plaintiff's Worker's Compensation claim, from Doctors Frank Oliveto (Tr. 448–51, 593–96), Anna Kogan (Tr. 587–90), Leonid Reyfman (Tr. 677–79), Steven Struhl (Tr. 680–81), Jeff Mollins, D.C. (Tr. 611–29, 759–66), and Felix Karafin (Tr. 603–08, 686–87). The ALJ "reviewed and considered" these opinions but did not assign any weight to them because the SSA's terminology and standards "for determining whether a claimant is or is not considered disabled" are different from those used to adjudicate Worker's Compensation claims. (Tr. 19.) The plaintiff does not challenge this determination.

she agreed with some of their findings about the plaintiff's limitations but found that other findings were either overly or insufficiently restrictive, based upon the entire record. (Tr. 18–19.) She gave only "some" weight to the opinions of Dr. Dvorkina; she agreed that the plaintiff could not return to his previous work but found that the parts of Dr. Dvorkina's opinion that recommended "greater" limitations "than those assessed in the [RFC]" were "unpersuasive" because they were not supported by the medical record. (Tr. 18.)

The ALJ found that the plaintiff could not work at his previous job as a floor installer (Tr. 19), but could work as a "[m]arker," "[r]outer," or an "[a]ssembler" of "small products" (Tr. 20). Accordingly, she concluded that the plaintiff was not disabled under the Social Security Act. (Tr. 20–21.)

## STANDARD OF REVIEW

A district court reviewing the Commissioner's disability decision must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). "[S]ubstantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case,'" the court will not defer to the ALJ's determination. *Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal

7

error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Moreover, the district court should remand the case if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citations omitted).

## DISCUSSION

The plaintiff challenges the ALJ's evaluation of the medical opinions in making the RFC determination, which he says "result[ed] in an insufficiently developed record." (ECF No. 13 at 9–13.) According to the Commissioner, the ALJ properly evaluated the medical opinions, but even if she did not, she "[did] not need to rely on opinion evidence to assess RFC" because substantial evidence in the record supported her RFC determination. (ECF No. 16-1 at 18–23.)

**I.     The ALJ Did Not Properly Evaluate the Medical Opinion Evidence**

    **a.     Treating Physician Rule**

Under the treating physician rule,[10] an ALJ must give a treating physician's opinion "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantive evidence in [the] case record." *Shaw v. Carter*, 221 F.3d 126, 134 (2d Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(2). The ALJ first decides whether the doctor's opinion is entitled to controlling weight. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). Then, "if the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Id.* When the ALJ does not give a treating physician's opinion controlling weight, she must determine the

---

[10] The parties agree that the treating physician rule applies because the plaintiff filed his claim with the SSA before March 27, 2017. (ECF No. 13 at 9; ECF No. 16-1 at 18 n.4.) *See* 20 C.F.R. § 404.1527.

8

proper weight, if any, to give it by "explicitly consider[ing] the following, nonexclusive *Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95–96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Estrella*, 925 F.3d at 96 (quoting *Selian*, 708 F.3d at 419–20).

If the ALJ does not consider the *Burgess* factors explicitly, the case must be remanded, "unless a searching review of the record shows that the ALJ has provided 'good reasons' for [her] weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (quoting *Estrella*, 925 F.3d at 95–96. *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand"); *see also Fontanez v. Colvin*, No. 16-CV-1300, 2017 U.S. Dist. LEXIS 160048, at *56 (E.D.N.Y. Sept. 28, 2017) (same).

    i.  *Dr. Gary Carpenter, MD*

In September 2016, shortly after the plaintiff hurt his back, Dr. Gary Carpenter diagnosed the plaintiff with "[c]hronic bilateral low back pain without sciatica," and recommended treating it with rest, cold packs, analgesics, and muscle relaxants. (Tr. 528–29.) He "asked [the plaintiff] to remain out of work indefinitely" while he treated the pain. (Tr. 528.) On December 21, 2016, Dr. Carpenter found that the plaintiff had a "decreased range of motion" in his lower back and left shoulder and lumbar back, "pain and spasms" in his lumbar back, "decreased strength" and "tenderness" in his left shoulder, and a normal gait. (Tr. 518, 521.)

9

In a December 21, 2016 medical source statement, Dr. Carpenter diagnosed the plaintiff with disc degeneration and "mild facet joint arthrosis," in addition to the chronic low back pain without sciatica. (Tr. 494.)[11]  The plaintiff's pain did not affect his ability to stand and walk, but he could only sit for one hour in an eight-hour work day. (Tr. 494.)  He could never "climb, stoop, kneel, . . . crawl," "push[ or ] pull," occasionally "bend, balance, and crouch," frequently "reach," and constantly "feel" and "handle." (Tr. 495.)  The plaintiff could lift a maximum of five pounds and "should avoid vibration and moving machinery." (Tr. 495.)

The ALJ did not explicitly consider the *Burgess* factors or provide "good reasons" for assigning Dr. Carpenter's decision "partial weight" (Tr. 19); this is sufficient grounds to remand the case. The ALJ's conclusory observation that "the record as a whole does not support weight limitations of 5 pounds or sitting limitations of 1 hour" (*id.*) does not "fulfill the heightened duty of explanation" that the treating physician rule requires, *Ashley v. Comm'r of Soc. Sec.*, No. 14-CV-40, 2014 U.S. Dist. LEXIS 178560, at *5 (N.D.N.Y. Dec. 30, 2014) (quoting *rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 508 (S.D.N.Y. 2014)).  *See also Duncan v. Astrue*, No. 09-CV-4462, 2011 U.S. Dist. LEXIS 49833, at *62 (E.D.N.Y. May 6, 2011) (explaining that statements such as "not supported by the preponderance of the objective evidence of record" and "not consistent with the evidence on record" are not sufficiently good reasons for reducing weight assigned to treating physician's opinion); *Mercado v. Colvin*, No. 15-CV-2283, 2016 U.S. Dist. LEXIS 91059, at *51 (S.D.N.Y. July 13, 2016) (finding that the ALJ did not satisfy the treating physician rule where he "did not explain why the record evidence was insufficient to support such a restriction").

---

[11] This diagnosis is supported in the record by a September 19, 2016 MRI of the lumbar spine. (Tr. 505–06.)

The ALJ's rationale that the plaintiff "has had no treatment since 2019" is also insufficient. (Tr. 19.) "[F]ailure to seek treatment does not constitute substantive evidence to discount the treating physician's opinion." *Hanlon v. Saul*, No. 18-CV-7090, 2020 U.S. Dist. LEXIS 35590, at *15–16 (E.D.N.Y. Mar. 2, 2020); *see also Shaw*, 221 F.3d at 133 ("Just because [the] plaintiff's disability went untreated does not mean he was not disabled."). Here, the ALJ did not inquire into or consider the plaintiff's possible reasons for not continuing treatment and instead dismissed the portion of Dr. Carpenter's opinion that did not support her own conclusion. *See, e.g.*, *Ianazzi v. Comm'r of Soc. Sec.*, No. 20-CV-4366, 2022 U.S. Dist. LEXIS 171729, at *23–24 (E.D.N.Y. Sept. 22, 2022). The ALJ did not consider the plaintiff's testimony that he was reluctant to use pain medication stronger than NSAIDs (Tr. 36, 104–05), and that he had not been able to go to the doctor because of the COVID-19 pandemic (Tr. 36).

Finally, the ALJ justified giving "partial weight" to Dr. Carpenter's opinion because the plaintiff was "independent in his activities of daily living." (Tr. 19.) However, "it is well settled that '[t]here is a critical difference between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job,' and 'the fact that a [p]laintiff can still perform simple functions . . . does not necessarily indicate that [the p]laintiff possesses an ability to engage in substantial gainful activity.'" *Cassick v. Comm'r of Soc. Sec.*, No. 17-CV-998S, 2019 U.S. Dist. LEXIS 105936, at *11 (W.D.N.Y. June 24, 2019) (citations omitted). The ALJ does not explain why the plaintiff's ability to perform certain daily tasks undermines Dr. Carpenter's opinion about his functional capacities.

Moreover, the ALJ appears to have misinterpreted the plaintiff's March 2019 and February 2021 hearing testimony and the December 30, 2016 Activities of Daily Living form. The ALJ concluded in her opinion that the plaintiff could "perform light cooking and cleaning,

11

do laundry, shop in stores, drive a car, help his wife in and out of the tub, help care for his minor child, build computers, and walk two miles before stopping." (Tr. 19.) But the plaintiff testified that he no longer cooks, rarely builds computers, and never drives, except to repark the car, "because it's difficult getting in and out of the vehicle" (Tr. 35, 41–44); his wife does all the laundry and shopping (Tr. 42, 103), takes care of their children (Tr. 96), and helps bathe and clothe him (Tr. 41, 105). Although the plaintiff could walk "about a mile," he would "have to rest" "two or three times" during the walk. (Tr. 101.) The Activities of Daily Living form (Tr. 381–403) is largely consistent with this testimony, except that he helped his then-pregnant wife out of the bathtub and to put on her shoes (Tr. 383). The form also says that the plaintiff helped with childcare, but that he no longer can do so "effectively." (*Id.*)

The ALJ seems to have relied on notes that Dr. Shtock—the consultative orthopedist—wrote about the plaintiff's daily abilities. But the ALJ did not say why the one-time consulting orthopedist's treatment notes were more credible than the plaintiff's testimony about "the intensity, persistence, and limiting effects of his . . . symptoms;" she said only that "examinations do not demonstrate disabling abnormalities and show that his gait is normal." (Tr. 18.) *See Manning v. Colvin*, No. 13-CV-497, 2014 U.S. Dist. LEXIS 147546, at *12 (W.D.N.Y. Oct. 15, 2014) ("[T]he ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged."); SSR No. 16-3p, 2016 SSR LEXIS 4 (S.S.A. Mar. 16, 2016).

      *ii.*     *Dr. Anzhela Dvorkina, MD*

In her initial report from November 2016, Dr. Anzhela Dzvorkina determined that the plaintiff could not return to work. (Tr. 633.) As explained above, in her subsequent reports, Dr.

Dvorkina found variously that the plaintiff was 100 percent, 75 percent, or 50 to 75 percent "temporarily impaired." (Tr. 658.) Her opinion about the amount of weight the plaintiff could lift also varied, ranging from 10 pounds to 25 pounds. In some reports, she opined that the plaintiff could not "climb[] stairs, kneel[]," "sit[], stand[]" or "use" his arms" (*see, e.g.*, Tr. 638, 641, 644, 649, 658); other reports included "[b]ending/twisting" and "[o]erating heavy equipment" among the plaintiff's limitations (*see, e.g.*, Tr. 646, 649, 658, 669). The ALJ gave Dr. Dvorkina's opinion "some weight" because "the standards for Workers' Compensation differ from those of Social Security." (Tr. 18.) She agreed with Dr. Dvorkina that the plaintiff could not return to his prior work, but found, "based upon the medical record," that Dr. Dvorkina's opinions about limitations that exceeded the ALJ's were "unpersuasive." (*Id.*)[12]

      Dr. Dvorkina is a "treating physician" for purposes of the plaintiff's claim. *See* 20 C.F.R. §§ 404.927 (defining "treating source" as one's "own acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or had had, an ongoing treatment relationship with [him]"); *see also, e.g.*, *Romero v. Comm'r of Soc. Sec.*, No. 18-CV-10248, 2020 U.S. Dist. LEXIS 109327, at *39 (S.D.N.Y. June 22, 2020); *Carner v. Comm'r of Soc. Sec.*, No. 05-CV-530, 2008 U.S. Dist. LEXIS 10735, at *15 (N.D.N.Y. Feb. 11, 2018). Accordingly, the ALJ could not dismiss her findings without applying the *Burgess* factors "simply because [she] also provided an opinion of disability for workers' compensation purposes." *Romero*, 2020 U.S. Dist. LEXIS 109327, at *40. *See also, e.g.*, *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) ("an ALJ may not reject a treating source's opinion[] solely" because "he rendered it in the context of [the claimant's]

---

[12] Specifically, the ALJ found "unpersuasive [Dr. Dvorkina's] opinions as to [the plaintiff's] ability to lift . . . 10 pounds (as indicated, in some forms, she indicates 25 pounds) or other restrictions greater than those assessed in the residual functional capacity." (Tr. 18.)

pursuit of a workers' compensation claim"); *Mercado*, 2016 U.S. Dist. LEXIS 91059, at *48 (a doctor's role in a claimant's workers' compensation case "is a legally insufficient reason to categorically disregard a treating physician's opinion") (collecting cases).  If the ALJ thought that Dr. Dvorkina "may have evaluated [the plaintiff] using the wrong standard, [she] should have asked [Dr. Dvorkina] for clarification of [the] disability determinations or presented [her] with the differences between workers' compensation and [DIB] guidelines before discounting [her] opinion[]." *Ligon v. Astrue*, No. 11-CV-162, 2012 U.S. Dist. LEXIS 171341, at *63 (E.D.N.Y. Dec. 3, 2012); *see also id.* at *64 ("A doctor's opinion is not intrinsically suspect because the patient is seeking other benefits." (citing 20 C.F.R. § 416.927(d)(2))).

For the same reasons discussed earlier, the ALJ did not articulate a sufficiently "good reason" for discounting Dr. Dvorkina's opinion.  *Duncan*, 2011 U.S. Dist. LEXIS 49833, at *61; *Mercado*, 2016 U.S. Dist. LEXIS 91059, at *48–49.  Nor can the ALJ disregard parts of Dr. Dvorkina's opinion as "unpersuasive" simply because Dr. Dvorkina found that the plaintiff needed restrictions "greater than those assessed in the residual functional capacity" (Tr. 18), because the ALJ "cannot arbitrarily substitute [her] own judgment for competent medical opinion," *McBrayer v. Sec'y of Health & Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983).  The medical opinions must inform the RFC determination, not the other way around.  *See Collins v. Comm'r of Soc. Sec.*, No. 20-CV-4693, 2021 U.S. Dist. LEXIS 135184, at * 14 (E.D.N.Y. July 20, 2021) ("I don't see how the ALJ can reject an opinion as consistent or inconsistent with her own assessment when she should not be making her own assessment until she has considered that opinion.").

To the extent Dr. Dvorkina's treating records were inconsistent or unclear, the ALJ "should have developed the record and sought clarification in view of the perceived

14

inconsistencies." *Weiss v. Comm'r of Soc. Sec.*, No. 19-CV-5916, 2021 U.S. Dist. LEXIS 96747, at *44 (E.D.N.Y. Mar. 23, 2021) (collecting cases).

Dr. Dvorkina's handwritten treatment notes are largely illegible, and she did not provide typed versions of all the notes. (*See, e.g.*, Tr. 669, 675, 758.) "When records produced are illegible but relevant to the plaintiff's claim, a remand is warranted to obtain supplementation and clarification." *Johnson v. Colvin*, No. 15-CV-649, 2016 U.S. Dist. LEXIS 114149, at *19 (W.D.N.Y. Aug. 25, 2016) (citing *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)); *see also Westfall v. Saul*, No. 18-CV-1243L, 2020 U.S. Dist. LEXIS 43344, at *5–6 (W.D.N.Y. Mar. 12, 2020) ("The ALJ's discrediting of Dr. Sharma's partially-illegible June 15, 2015 opinion without recontacting her for clarification or elaboration, and his failure to consider any of the factors relevant to the evaluation of a treating physician's opinion, is error."). On remand, the ALJ should ask for typed versions of all Dr. Dvorkina's notes.

The Commissioner argues that the opinions of consultative physicians and non-examining experts may override treating sources' opinions, "provided they are supported by evidence in the record." (ECF No. 16-1 at 18 (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011)).) As discussed further below, the ALJ did not establish that the consultative doctors' opinions were supported by evidence in the record, provide "insight into [her] consideration of the conflicting evidence," or "attempt to reconcile" that evidence. *Danette Z. v. Comm'r of Soc. Sec.*, No. 19-CV-1273, 2020 U.S. Dist. LEXIS 212320, at *20 (N.D.N.Y. Nov. 13, 2020).

b. **Consultative Examiner**

Dr. Chaim Shtock, a doctor of osteopathic medicine, performed a consultative orthopedic examination of the plaintiff on January 25, 2017. (Tr. 441.) The plaintiff had a "normal" gait,

15

did not use a cane, could "walk on heels and toes without difficulty and "[s]quat [at] 50% of full," "[n]eeded no help changing for the exam or getting on and off [the] exam table," and was "[a]ble to rise from [a] chair without difficulty." (Tr. 442.) The plaintiff had "mild" limitations with "heavy lifting, squatting," "frequent stair climbing, walking long distances, standing long periods, and sitting long periods;" "mild to moderate" limitations with "frequent bending;" "moderate" limitations with "crouching" and "performing overhead activities using the left arm;" and "no limitations" with "performing overhead activities using the right arm" and "using both hands for fine and gross manual activities." (Tr. 444.)

The ALJ did not explain why she gave Dr. Shtock's opinion partial weight. This was error. "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Estrella*, 925 F.3d at 98 (quoting *Selian*, 708 F.3d at 419). Moreover, the opinion of a consultative physician who "did not review important medical records . . . cannot constitute [a] 'good reason[]' for overriding a treating physician's opinion or substantial evidence to support an RFC." *Benitez v. Comm'r of Soc. Sec.*, No. 20-CV-5026, 2021 U.S. Dist. LEXIS 177581, at *47 (S.D.N.Y. Sept. 17, 2021). For example, "when consultative physicians fail to read a claimant's MRI results prior to formulating a medical opinion, their opinion cannot constitute substantial evidence." *Fintz v. Kijakazi*, No. 22-CV-337, 2023 U.S. Dist. LEXIS 66226, at *12 (E.D.N.Y. Apr. 15, 2023) (collecting cases). It is not clear what medical records Dr. Shtock reviewed to reach his opinion; his report attaches records of back and left knee x-rays, but the x-rays were taken five days after the date of Dr. Shtock's opinion. (*See* Tr. 441–46.) His report also describes the plaintiff's past medical history (Tr. 441–42), but neither he nor the ALJ addressed whether he had access to the plaintiff's medical records.[13]

---

[13] Dr. Shtock's use of the terms "mild" and "moderate" to describe the plaintiff's impairments "does not render [his] opinion vague or non-substantial for purposes of the ALJ's RFC determination" because

16

      **c.**      **Non-Examining Experts**

The ALJ also relied on the opinions of two non-examining experts—Dr. Fuchs and Dr. Wells—to determine the plaintiff's RFC. "The opinion of a non-examining physician cannot constitute substantial evidence on its own and as such should not be heavily relied upon by an ALJ." *Fintz*, 2023 U.S. Dist. LEXIS 66226, at *17 (citing *Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1360, 2021 U.S. Dist. LEXIS 149462, at *60–61 (S.D.N.Y. Aug. 9, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 160925 (S.D.N.Y. Aug. 25, 2021)). "This is true even when there is more than one non-examining expert opinion," and where two non-examining experts are "in almost complete agreement." *Id.* (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 107–08 (2d Cir. 2003)). *See also Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 251 (E.D.N.Y. 2020) (determining that a non-examining expert's opinion, despite being consistent with much of the record and the plaintiff's hearing testimony, still cannot constitute substantial evidence alone because the expert did not examine the plaintiff).

The ALJ adopted parts of the non-examining experts' opinions that conflicted with those of the treating physicians; for example, Dr. Wells found that the plaintiff could lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally, whereas Dr. Carpenter found that the plaintiff could handle only five pounds. (Tr. 16–19.) Dr. Wells opined the plaintiff could sit for six hours at a time, and Dr. Fuchs opined that the plaintiff could sit for two hours at a time for a total of six hours. Dr. Carpenter, on the other hand, concluded that the plaintiff could sit for only one hour at a time. (*Id.*) "Without the support of an opinion by an expert who actually examined

---

his opinion also "included additional information to show how these limitations would affect [the p]laintiff's RFC." *Quintana v. Berryhill*, No. 18-CV-561, 2019 U.S. Dist. LEXIS 45101, at *46–47 (S.D.N.Y. Mar. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 16-CV-9634, 2018 U.S. Dist. LEXIS 44123, at *26 (S.D.N.Y. Mar. 19, 2018)).

[the p]laintiff, however, the non-examining doctors' opinions cannot constitute substantial evidence." *Fintz*, 2023 U.S. Dist. LEXIS 66226, at *18–19 (citing *Avila*, 2021 U.S. Dist. LEXIS 149462, at *60–61). This is especially significant because it is not evident that Doctors Fuchs and Wells reviewed all the medical evidence in forming their opinions; Dr. Fuchs seemed to be unfamiliar with some of the treating physicians' medical records (Tr. 64–74), and Dr. Wells "did not have the opportunity to review the evidence available at the hearing level" (Tr. 131).

To the extent that the non-examining experts' opinions were inconsistent with an examining physician's assessment, the ALJ should, on remand, provide a comprehensive explanation of the opinions' supportability and consistency, as well as the other factors required by the regulations. *Avila*, 2021 U.S. Dist. LEXIS 149462, at *61–62.

The Commissioner argues that even if the consultative opinions "were all discredited," the RFC determination is still supported by substantial evidence, "because the ALJ is 'entitled to weigh all of the evidence available," including "raw" medical evidence, "to make an RFC finding that [i]s consistent with the record as a whole.'" (ECF No. 16-1 at 20–22.) It is true that "an ALJ may craft an RFC without guidance from a medical opinion when the record 'contains sufficient evidence to permit [her] to render a common-sense RFC determination,'" but that exception does not apply here. *Fortuna v. Saul*, No. 16-CV-11066, 2021 U.S. Dist. LEXIS 48186, at *90 n.28 (S.D.N.Y. Mar. 15, 2021) (quoting *Morrill v. Saul*, No. 19-CV-6279F, 2020 U.S Dist. LEXIS 157795, at *11 (W.D.N.Y. Aug. 31, 2020)). This is not a case in which "the medical records . . . show[] relatively minor impairments" that are not "disabling," "rather than non-benign, 'complex medical findings' that cannot be interpreted by a lay person." *Id.* (citations omitted). This record includes MRI analyses, X-rays, orthopedic and neurologic assessments of the plaintiff's diagnosed degenerative disc disease, degenerative joint disease in

18

his left knee, and left shoulder arthropathy. (Tr. 14–17.) *See, e.g.*, *Fortuna*, 2021 U.S. Dist. LEXIS 48186, at *90 n.28. The ALJ needed "medical expertise to interpret these complex findings and could not assess the RFC based on 'common sense.'" *Id.* (quoting *Dale v. Colvin*, No. 15-CV-496, 2016 U.S. Dist. LEXIS 101193, at *10 (W.D.N.Y. Aug. 2, 2016)).[14]

---

[14] Moreover, contrary to the Commissioner's argument, *Schillo v. Kijakazi*, 31 F.4th 64, 79 (2d Cir. 2022), did not "clarify an ALJ's independence in assessing RFC" (ECF No. 16-1 at 22); rather, the ALJ looked at the medical record to evaluate the supportability and consistency of the medical opinions, which the ALJ gave "partial weight" to inform his RFC determination.

## CONCLUSION

The ALJ's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                                                                                          s/Ann M. Donnelly
                                                                                                                           _____

                                                                                                                           ANN M. DONNELLY
                                                                                                                            United States District Judge

Dated: Brooklyn, New York
          March 27, 2024